UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KEVIN L. LAWSON,
                      Plaintiff,

      v.                                  DECISION AND ORDER
                                                    14-CV-474S
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.

      1.      Plaintiff, Kevin L. Lawson, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since January 14, 2010, due to post-operative pain in his left shoulder and both knees. Plaintiff contends that his impairments have rendered him unable to work. He therefore asserts that he is entitled to disability and supplemental income benefits under the Act.

      2.      Plaintiff applied for Disability Insurance Benefits ("DIB") benefits on March 16, 2011. The Commissioner of Social Security initially denied his application on July 28, 2011. Pursuant to Plaintiff's request, ALJ Michael W. Devlin held an administrative hearing on July 26, 2012, at which time Plaintiff appeared with counsel and testified. Vocational expert, Julie A. Andrews, also appeared and testified at the hearing. The ALJ considered the case *de novo*, and on October 16, 2012, he issued a decision denying Plaintiff's application for benefits. On April 23, 2014, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on June 17, 2014, challenging Defendant's final decision.[1]

---

[1] The ALJ's October 16, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On October 27, 2014, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 6). On January 29, 2015, the Commissioner filed a Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief. (Docket No. 10). Plaintiff filed a reply on March 11, 2015 (Docket No. 13), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted and Defendant's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see also Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v.

Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment,

3

> he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since January 14, 2010, the alleged onset date of his disability (R. 24)[2]; (2) Plaintiff's post-operative status left shoulder arthroscopic debridement, acromioplasty, and open distal clavicle excision; post-operative status left shoulder arthroscopic debridement, open supraspinatus repair, and biceps tenodesis; total left knee replacement; and status post right knee surgeries were "severe" impairments within the meaning of the Act (id.); (3) Plaintiff's impairments do not meet or equal the criteria necessary for finding a disabling impairment under the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 25); (4) Plaintiff is capable of "occasionally lifting and/or carrying ten

---

[2] Citations to the administrative record are designated as "R."

pounds, frequently lifting and/or carrying less than ten pounds, standing and/or walking at least two hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday," he requires the use of a cane "to ambulate to and from a work station", is capable of occasionally climb [sic] ramps and/or stairs, balancing and stooping, as well as reaching (all directions rather than overhead) and handling with the non-dominant left upper extremity," but "can never kneel, crouch, crawl, … climb ladders/ropes/scaffolds, or reach overhead with his non-dominant left upper extremity" and, therefore, had the residual functional capacity ("RFC") to perform less than the full range of sedentary work (R. 25)[3]; and (5) Plaintiff is unable to perform his past relevant work as a conservation police officer (Fish and Game Warden), but could perform other jobs, including order clerk and surveillance system monitor. (R. 31, 32). Thus, Plaintiff was not under a disability, as defined by the Act, at any time from the alleged onset date through October 16, 2012, the date of his decision. (R. 32). Plaintiff challenges the ALJ's determination that he is not disabled and asserts that remand is necessary.

10. First, Plaintiff argues the ALJ's credibility determination was flawed. Plaintiff argues that the ALJ misinterpreted Plaintiff's daily activities, which was dispositive of his decision to discredit Plaintiff's subjective claims of pain and limitations. (R. 26, 29). In addition, Plaintiff notes that the ALJ made no mention of Plaintiff's testimony regarding his need to elevate his legs for a significant portion of each day. (See R. 57-58). Finally, the ALJ failed to consider and discuss Plaintiff's favorable and

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a)

5

significant employment history. The Court agrees that remand is necessary based on the legally insufficient credibility analysis.

"In determining the credibility of the individual's statements, the [Commissioner] must consider the entire case record, including objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . , and any other relevant evidence in the case record." SSR 96-7P, 1996 WL 374186, *1 (July 2, 1996). "An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Id. Furthermore, an ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. In addition, a Plaintiff with "a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Jones v. Astrue, No. 07-CV-276S, 2008 WL 4372653, at *4 (W.D.N.Y. Sept. 18, 2008), quoting Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983).

In assessing a claimant's credibility on the intensity and persistence of his impairments, an ALJ will consider factors such as (i) plaintiff's daily activities; (ii) location, duration, frequency, and intensity of pain and symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness and side effects of any medications taken to alleviate the pain and symptoms; (v) treatment other than medication; (vi) any

measures used to relieve the pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain and symptoms.  20 C.F.R. § 404.1529(c)(3); see also SSR 96–7p, 1996 WL 374186 (1996).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (R. 26).  Furhter, based on his review of the "longitudinal clinical record" and reviewing Plaintiff's statements in the Adult Function Report, the ALJ concluded that the "objective medical evidence, namely the claimant's improvement after surgery and physical therapy does not match the claimant's Function Report and his testimony regarding his functional limitations."  (R. 29).

"Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are 'sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.' " Wischoff v. Astrue, No. 08–CV–6367, 2010 WL 1543849, at *7 (W.D.N.Y. Apr.16, 2010) (quoting Delk v. Astrue, No. 07–CV–167–JTC, 2009 WL 656319, at *4 (W.D.N.Y. Mar.11, 2009)).  The ALJ considered several of the factors in his decision.  For example, weighing against a disability finding, the ALJ noted that Plaintiff's "current treatment consists of at home exercises" and sometimes prescription medication, "usually of short duration," but that Plaintiff is "typically" advised to take over the counter medication for discomfort.  (R. 29); see SSR 98-7p.  Likewise, the ALJ also noted that several activities that the Plaintiff is unable to do without pain, such as using a snow blower, pushing a lawn mower, raking, and shoveling are not relevant to

sedentary work or are otherwise accommodated by his RFC, and thus, do not warrant a finding of disability. (R. 29). The ALJ also noted that Plaintiff "still engages in activities such as taking care of his personal hygiene, laundry, shopping, attending church, [and] volunteering …, as long as he does not have to lift or exert his left arm and shoulder," therby concluding that by" engaging in a wide range of activities the [Plaintiff] has shown he is capable of performing work activities" with certain limitations. (R. 29). Furthermore, the ALJ generally relied on statements in various treatment notes relating to Plaintiff's good prognosis and likelihood of his various conditions improving. (R. 26-30); see also SSR 96-7P, 1996 WL 374186, *7 (July 2, 1996). Thus, the ALJ concluded: "Given the claimaint's activities of daily living, statements of his treating sources, and current regimen, it is not consistent with his allegations of having a disabling impairment." (R. 29).

Plaintiff argues that "[b]y relying on ambiguous statements [about his activities of daily living] and failing to consider plaintiff's need to elevate his legs (Tr. 54-55, 66-67), which is clearly a "measure used to relieve pain" requiring evaluation under the Ruling," the ALJ's credibility analysis is based on legal error. The Court notes at the outset that it is the ALJ's duty, and not the Court's, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.2002).

At the hearing, Plaintiff testified that the pain and stiffness in both knees limits his ability to sit for more than "about an hour or so", after which time he would need to walk around to relieve stiffness or recline and elevate his knees to relieve swelling. (R. 57-58). He estimated that, during an eight hour work day, he could walk or stand for two

8

hours total, sit for about four hours total, and would need to recover "in some way or another" for the remaining two hours, "[u]sually elevating sitting in a recliner, putting my leg up." (R. 58). The Court cannot from the opinion determine whether the ALJ considered this specific testimony or for what reasons he found Plaintiff's testimony not entirely credible on this "aggravating and precipitating factor." See SSR 96-7p. The vocational expert testified that Plaintiff's alleged need to elevate his legs in a reclining position would eliminate both jobs consistent with the ALJ's RFC; in effect, there would be no jobs available in the national economy on a "full-time competitive basis" that would accommodate this practice. (R. 66-67). Thus, if the ALJ had found Plaintiff's testimony credible on this point, a finding of disability would be warranted.

Plaintiff also highlights that he sought repeated treatments for his left shoulder and both knees, including multiple surgeries. The ALJ was obviously aware of Plaintiff's extensive treatment history, but did not acknowledge whether he weighed it as a factor supporting Plaintiff's credibility. See SSR 96-7p ("Persistent attempts by the individual to obtain relief of pain or other symptoms … generally lend support to an individual's allegations of intense and persistent symptoms.").

In addition, the ALJ failed to consider and discuss Plaintiff's favorable employment history in his credibility determination. See Pena v. Barnhart, No. 01 Civ. 502, 2002 WL 31487903, at *13 (S.D.N.Y. Oct. 29, 2002) (the failure to consider a claimant's work history in an evaluation of his or her credibility is "'contrary' to the law in this circuit and the SSA's rulings"), quoting Montes-Ruiz v. Charter, 129 F.3d 114 (Table) (2d Cir.1997); Patterson v. Chater, 978 F.Supp. 514, 519 (S.D.N.Y. 1997) (claimant with established history of employment is unlikely to be "feigning disability").

Here, Plaintiff has a nearly 23-year work history as a conservation police officer. (R. 279). He returned to work after sustaining both his right knee injury and left shoulder injury, which precipitated his alleged disability, and only stopped working when his functional ability became so limited that he could no longer perform his job effectively. (See R. 320.). Here, the ALJ was required to either afford "substantial credibility" to Plaintiff's claim that he was unable to work because of his disability, or specifically state in the decision why Plaintiff was not credible despite his work history. Rivera, 717 F.2d at 725.

Therefore, based on the omissions discussed herein, the credibility finding is legally deficient, and this Court will remand this case to allow the ALJ to properly consider Plaintiff's testimony, characterization of his daily activities, and work history.

11.   Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence. He asserts that ALJ was not qualified to convert Dr. Otten's raw medical findings into functional limitations, and should have asked for a medical source statement. Plaintiff further notes that treatment and examining notes generally fail to address his combined limitations, and the record does not contain any functional evaluation by a treating physician.

The ALJ found that Plaintiff's "limitation of lifting and carrying no more than ten pounds frequently and less than ten pounds occasionally [sic] precludes him from being able to perform his past relevant work" as a conservation police officer (Fish and Game Warden). This finding, "supported by overwhelming evidence, confirmed that [Plaintiff] had satisfied his initial burden of showing that he is disabled and shifted to the Secretary the burden of showing that his impairment does not prevent him from

performing other substantially gainful work that exists within the national economy." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)

As this Court has recently stated, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion …, [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'" Lewis v. Colvin, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014), quoting Tankisi v. Comms'r of Social Security, 521 F. App'x 29, 34 (2d Cir. 2013).

Despite the ALJ's thorough discussion of the medical record, however, the ALJ's decision and the record are lacking with respect to Plaintiff's ability to *sit* for the 6 hours in an 8-hour work day required by the sedentary work definition. Therefore, because it is the ALJ's duty to explain his decision, and maintain his burden of proof that the Plaintiff can perform the requisite duties of sedentary work with limitations on "a regular and continuing basis," the ALJ is directed to consider on remand Plaintiff's related arguments, including whether there are, in fact, gaps in the record regarding Plaintiff's limitations, and specifically from his combined impairments.

12.   Plaintiff additionally argues remand is warranted because the Appeals Council did not remand the case to the ALJ for consideration of new evidence, which includes a treatment note by Dr. Otten for a visit that occurred just days after the ALJ rendered his decision. (R. 682). The Appeals Council considered the additional evidence and found that it did not "provide a basis for changing the [ALJ]'s decision." (R. 1-2). Although some of the evidence submitted to the Appeals Council appears to already exist in the record, the Court finds that it is related to both the period at issue

and Plaintiff's ongoing knee problems. (See R. 667-684). See Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) ("New evidence is material if it is both (1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative."), quoting Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988) (internal quotation marks omitted). Given this Court's decision to remand on other grounds, the ALJ should consider the new evidence in rendering a decision. See generally Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) (new evidence treated as part of the administrative record).

13.   Finally, Plaintiff contends in his reply that the ALJ failed to consider whether he qualified, at least, for a closed period of disability during the thirteen month period between June 2011, when he underwent left knee replacement, and August 2012, when his Department of Veteran's Affairs ("VA") disability rating changed from 100% to 30% disabled. (See R. 216). Plaintiff's bases this contention on a VA disability determination letter dated January 19, 2012. (Id.). In somewhat contradictory fashion, the ALJ relied on the VA letter in support of his general determination that Plaintiff's condition improved and in support of his RFC. (R. 30).

The letter states: "An evaluation of 100% is assigned for thirteen months following prosthetic replacement of the knee joint. As you had surgery on June 15, 2011, the thirteen month period expires July 31, 2012. Therefore, the evaluation of left total knee arthroplasty is reduced to 30 percent effective August 1, 2012." (R.218). It further notifies Plaintiff that the disability determination could be increased to 60%, under certain circumstances, upon additional examination to take place in or about August 2012. (Id.). It also states that "[s]ince there is a likelihood of improvement, the

assigned evaluation is not considered permanent and is subject to a future review examination." (Id.). Despite summarizing Plaintiff's condition in the few months following his knee replacement, the letter appears to merely inform Plaintiff of the VA's automatically assigned disability rating following any knee replacement surgery. (R. 218); see 38 C.F.R. § 4.71a (item 5055 knee replacement (prosthesis)).

In affording the VA's 30% disability determination "some weight," the ALJ relied on it in support of his RFC conclusion, stating that the opinion is consistent with the medical record and that his left knee has improved to the point where he can function at the designated RFC. (R. 30). The ALJ further found the opinion to be consistent with Dr. Otten's assessment that Plaintiff had a 30% "Schedule Loss of Use" for his *right* knee . (R. 30).

Although the VA's disability findings are generally "entitled to some weight and should be considered," Hankerson v. Harris, 636 F.2d 893, 897 (2d Cir. 1980), the letter, dated January 19, 2012, was sent during the VA's automatic period of 100% disability following Plaintiff's *left* knee replacement and was based on a review of certain medical records dated only through October 2011. (R. 217). Thus, in this case, given the general nature of this correspondence, the Court finds it lacks probative value for establishing a closed period of disability between June 2011 and August 2012, as Plaintiff now contends. Furthermore, it offers no supplementary support for concluding whether or not Plaintiff has a disability under the Act as it does not purport to base either the 100% and 30% disability ratings or "likelihood of improvement" on Plaintiff's specific symptoms and limitations.

14. After carefully examining the record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's Motion for Judgment on the Pleadings is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of Court is directed to CLOSE this case.


SO ORDERED.


Dated: September 24, 2015
Buffalo, New York

                                              <u>/s/William M. Skretny</u>
                                               WILLIAM M. SKRETNY
                                           United States District Judge